1   STEPHANIE M. HINDS (CABN 154284)
    Acting United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   MAUREEN C. BESSETTE (CABN 165775)
    Assistant United States Attorney
5
        1301 Clay Street, Suite 340S
6       Oakland, California 94608
        Telephone:  (510) 637-3691
7       Fax:  (510) 637-3724
        E-mail:  Maureen.Bessette@usdoj.gov
8

9   Attorneys for United States of America

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13  IN THE MATTER OF THE              )   CASE NO. 4:21-mj-71102 MAG
    EXTRADITION OF DIMITRIOS          )
14  MOULATSIOTIS                      )   U.S. MEMORANDUM OF LAW
                                      )   IN OPPOSITION TO BAIL
15                                    )

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

Nov 02 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................................1

II.  APPLICABLE LAW ....................................................................................................1

    A.  Presumption against bail in international extradition proceedings. ...................2

    B.  The fugitive must establish "special circumstances" and must not pose a risk
        of flight for the Court to consider the question of bail. .....................................3

III.  FUGITIVE POSES A RISK OF FLIGHT AND HAS FAILED TO ESTABLISH SPECIAL
     CIRCUMSTANCES ........................................................................................................12

IV.  CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

## Federal Cases

*Afanesjev v. Hurlburt*, 418 F.3d 1159 (11th Cir. 2005)...................................................................... 2

*Borodin v. Ashcroft*, 136 F. Supp.2d 125 (E.D.N.Y. 2001).............................................................. 8

*Charlton v. Kelly*, 229 U.S. 447 (1913) ........................................................................................... 11

*Collins v. Loisel*, 259 U.S. 309 (1922)............................................................................................. 11

*DeSilva v. DiLeonardi*, 125 F.3d 1110 (7th Cir. 1997) ................................................................... 11

*Estelle v. Gamble*, 429 U.S. 97 (1976) .............................................................................................. 7

*Hababou v. Albright*, 82 F. Supp.2d 347 (D.N.J. 2000) ............................................................. 6, 10

*Hooker v. Klein*, 573 F.2d 1360 (9th Cir. 1978)............................................................................. 11

*In re Extradition of Bowey*, 147 F. Supp.2d 1365 (N.D. Ga. 2001) .......................................... 6, 10

*In re Extradition of Chapman*, 459 F. Supp.2d 1024 (D. Haw. 2006) ............................................ 4

*In re Extradition of Gonzalez*, 52 F. Supp.2d 725 (W.D. La. 1999)................................................ 5

*In re Extradition of Heilbronn*, 773 F. Supp. 1576 (W.D. Mich. 1991)............................... 8, 9, 10

*In re Extradition of Nacif-Borge*, 829 F. Supp. 1210 (D. Nev. 1993) .................................. passim

*In re Extradition of Orozco*, 268 F. Supp.2d 1115 (D. Ariz. 2003).......................................... 8, 12

*In re Extradition of Santos*, 473 F. Supp.2d 1030 (C.D. Cal. 2006)......................................... 4, 5

*In re Extradition of Siegmund*, 887 F. Supp. 1383 (D. Nev. 1995) .............................................. 12

*In re Extradition of Valles*, 36 F. Supp.2d 1228 (S.D. Cal. 1998).................................................. 8

*In re Johnson*, 2012 WL 3929811 (W.D. Pa. 2012) ........................................................................ 9

*In re Klein*, 46 F.2d 85 (S.D. N.Y. 1930) ................................................................................... 7, 10

*In re Mitchell*, 171 F. 289 (S.D. N.Y. 1909).............................................................................. 3, 6

*Jhirad v. Ferrandina*, 536 F.2d 478 (2d Cir. 1976)....................................................................... 2, 9

*Koskotas v. Roche*, 931 F.2d 169 (1st Cir. 1991) ........................................................................... 3

*Martin v. Warden, Atlanta*, Penitentiary, 993 F.2d 824 (11th Cir. 1993).................................... 1, 9

*Matter of Extradition of Drumm*, 150 F. Supp. 3d 92 (D. Mass. 2015)........................................ 9

*Matter of Extradition of Garcia*, 615 F. Supp. 2d 162 (S.D.N.Y. 2009) ...................................... 8

*Matter of Extradition of Hamilton-Byrne*, 831 F. Supp. 287 (S.D.N.Y. 1993) ............................ 7

1    *Matter of Extradition of Mainero*, 950 F. Supp. 290 (S.D. Cal. 1996)....................................................... 5, 11

2    *Matter of Extradition of Molnar*, 182 F. Supp.2d 682 (N.D. Ill. 2002)........................................................ 4, 5

3    *Matter of Extradition of Morales*, 906 F. Supp. 1368 (S.D. Cal. 1995) ........................................................ 4

4    *Matter of Extradition of Rouvier*, 839 F. Supp. 537 (N.D. Ill. 1993) ......................................... 2, 7, 11, 12

5    *Matter of Extradition of Rovelli*, 977 F. Supp. 566 (D. Conn. 1997) ........................................................ 8

6    *Matter of Extradition of Russell*, 805 F.2d 1215 (5th Cir. 1986)............................................................. 4, 6

7    *Matter of Extradition of Sidali*, 868 F. Supp. 656 (D.N.J. 1994) ........................................................... 8, 10

8    *Matter of Extradition of Smyth*, 976 F.2d 1535 (9th Cir. 1992) ............................................................... 6

9    *Matter of Extradition of Sutton*, 898 F. Supp. 691 (E.D. Mo. 1995) .................................................... 2, 12

10   *Sabatier v. Dabrowski*, 586 F.2d 866 (1st Cir. 1978) ................................................................................ 9

11   *Simmons v. Braun*, 627 F.2d 635 (2d Cir. 1980) ....................................................................................... 2

12   *United States ex rel. McNamara v. Henkel*, 46 F.2d 84 (S.D.N.Y. 1912) ............................................... 10

13   *United States v. Bovio*, 989 F.2d 255 (7th Cir. 1993) ................................................................................ 2

14   *United States v. De Lorea*, 2006 WL 1518981 (N.D. Ind. 2006) ............................................................. 9

15   *United States v. Hills*, 765 F. Supp. 381 (E.D. Mich. 1991) ................................................................. 6, 8

16   *United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008)................................................................................. 5

17   *United States v. Kamrin*, 725 F.2d 1225 (9th Cir. 1984)…………………………………………………..1

18   *United States v. Kidder*, 869 F.2d 1328 (9th Cir. 1989) ........................................................................... 7

19   *United States v. Kin-Hong*, 83 F.3d 523 (1st Cir. 1996)................................................................. 6, 10, 11

20   *United States v. Leitner*, 784 F.2d 159 (2d Cir. 1986).......................................................................... 3, 4

21   *United States v. Melia*, 667 F.2d 300 (2d Cir. 1981) ............................................................................... 2

22   *United States v. Ramnath*, 533 F. Supp.2d 662 (E.D. Tex. 2008) ........................................................ 4, 5

23   *United States v. Salerno*, 878 F.2d 317 (9th Cir. 1989)................................................................... passim

24   *United States v. Taitz*, 130 F.R.D. 442 (S.D. Cal. 1990) ................................................................... 4, 7, 9

25   *United States v. Tang Yee-Chun*, 657 F. Supp. 1270 (S.D.N.Y. 1987) .................................................. 6

26   *United States v. Williams*, 611 F.2d 914 (1st Cir. 1979) ......................................................................... 4

27   *Wright v. Henkel*, 190 U.S. 40 (1903)............................................................................................... 2, 3, 6

28

iii

1

<u>Federal Statutes</u>

2  18 U.S.C. § 3156 ............................................................................................................... 1

3  18 U.S.C. § 3156(a)(2) ...................................................................................................... 1

4  18 U.S.C. § 3141 ........................................................................................................... 1, 2

5  18 U.S.C. § 3184 ......................................................................................................... 1, 11

6

7

<u>Federal Rules</u>

8  Fed. R. Evid. 1101(d)(3) ................................................................................................... 2

9  Fed. R. Crim. P. 1(a)(5)(A) .............................................................................................. 2

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

On November 2, 2021, U.S. Marshals arrested fugitive Dimitrios Moulatsiotis (the "Fugitive") in Piedmont, California, pursuant to a warrant issued by U.S. Magistrate Judge Donna Ryu on June 29, 2019.  The warrant was based upon a complaint seeking the Fugitive's extradition to Germany pursuant to an extradition treaty between the United States and Germany (hereinafter, "the Treaty"), and pursuant to 18 U.S.C. §§ 3184 et seq.  The Fugitive is currently in the custody of the U.S. Marshals.

As stated in its Amended Complaint, German authorities have submitted a formal request through diplomatic channels for the extradition of the Fugitive, a Greek citizen, from the United States to Germany.  The Fugitive formerly resided in Germany where he is charged with committing commercially based and gang-related fraud, in violation of the German Federal Criminal Code Sections 263(1) and (5) within the jurisdiction of Germany.  On February 13, 2018, a German judge for the District Court in Kaiserslautern, Germany, issued a warrant for the Fugitive's arrest.

The United States, in execution of its treaty responsibilities and acting at the request of the Government of Germany, urges that the fugitive be held without bond pending an extradition hearing pursuant to 18 U.S.C. §§ 3184, et seq.

## II.    APPLICABLE LAW

The federal statute governing extradition procedures (18 U.S.C. §§ 3184 et seq.) in the United States pursuant to treaties with other nations, does not provide for bail.  Moreover, an extradition proceeding is not a criminal case.  *See Kamrin v. United States*, 725 F.2d 1225, 1227-1228 (9th Cir.), *cert. denied* 469 U.S. 817 (1984); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993).  Consequently, the Bail Reform Act (18 U.S.C. §§ 3141 et seq.) and its criteria governing the allowance and the amount of bail in United States criminal cases do not apply in extradition matters. The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts.  *See* 18 U.S.C. §§ 3141(a), 3142, and 3156(a)(2).

Fugitive Moulatsiotis is not charged with an "offense" within the meaning of 18 U.S.C. § 3156.[1] Instead, he is charged with a criminal offense against Germany.  *See Matter of Extradition of Rouvier*,

---

[1] The term "offense" for the purposes of Section 3141 is defined in 18 U.S.C. § 3156(a)(2) as

1

839 F. Supp. 537, 539 (N.D. Ill. 1993); *Matter of Extradition of Sutton*, 898 F. Supp. 691, 694 (E.D. Mo. 1995.)

Similarly, neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings.[2] Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3); *See also Afanesjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005), *cert. denied* 546 U.S. 993 (2005); *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981); *Bovio v. United States*, 989 F.2d 255, 259 n.3 (7th Cir. 1993).

### A. Presumption against bail in international extradition proceedings.

There is a strong presumption against granting bail in international extradition cases. Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted only in the most unusual of circumstances. In the landmark case of *Wright v. Henkel*, 190 U.S. 40 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was a director. The United States asserted that extradition courts had no power to allow bail because no statute provided such power. *Id.* at 55. The Supreme Court was unwilling to hold that the circuit courts did not possess the power to allow bail, but cautioned that "bail should not ordinarily be granted in cases of foreign extradition…" *Id.* at 63.

In establishing this presumption against bail, the *Wright* Supreme Court explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Id.* at 62.

---

"any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress. . ."

[2] Although the issue before the Court is the fugitive's request for bail, the government notes that neither the prohibitions against hearsay (*Simmons v. Braun,* 627 F.2d 635, 636 (2d Cir. 1980)), nor the Sixth Amendment's guarantee to a speedy trial (*Jhirad v. Ferrandina,* 536 F.2d 478, 485 n.9 (2d Cir. 1976), *cert. denied*, 429 U.S. 833 (1976), *reh. denied*, 429 U.S. 988 (1976)), apply to international extradition proceedings.

The reasons for this presumption against bail in international extradition cases are clear and compelling. First, it is necessary for the United States to meet its treaty obligations. A person sought for extradition is already an international fugitive from justice. Therefore, it is reasonable to think that person would flee if alerted to the charges. Even if the person were not in flight, the fact of an impending extradition to a foreign country to face serious criminal charges, the outcome of which is uncertain, is itself a strong incentive to flee.

Second, the ability of the United States to deliver fugitives pursuant to extradition requests has significant international law implications. The international legal system depends wholly upon the respect of its members for the obligations into which they freely enter. When, as here, the government of Germany meets the conditions of the treaty, the United States is obliged to deliver the fugitive. It is important for the United States to be regarded in the international community as a country that honors its agreements in order to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. *See Wright*, 190 U.S. at 62; *see also U.S. v. Leitner*, 784 F.2d 159, 160-61 (2d Cir. 1986) (government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

### B.   The fugitive must establish "special circumstances" and must not pose a risk of flight for the Court to consider the question of bail.

In light of the strong presumption against bail in extradition cases established in *Wright*, federal courts have uniformly held that bail shall not be granted except under "special circumstances." *See Leitner*, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory," quoting *In re Mitchell*, 171 F. 289 (S.D. N.Y. 1909) (Hand, J.); *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989) ("only 'special circumstances' justify bail"); *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991) ("in a case involving foreign extradition, bail should not be granted absent special circumstances"). Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the granting of bail. *See Salerno*, 878 F.2d at 317-18, *Leitner*, 784 F.2d at 160.

Notably, courts have determined that certain circumstances are not "special" and do not justify the release of a fugitive during extradition proceedings. First and foremost, the absence of flight risk is

consistently held not to constitute a special circumstance. Rather, **both** the absence of a risk of flight **and** a finding of special circumstances are each independent requirements for bail in an extradition case. Therefore, to qualify for bail, a fugitive is required to make a two-part showing that (1) s/he is not a flight risk, and (2) that "special circumstances" exist warranting the granting of bail. *See e.g., United States v. Ramnath*, 533 F. Supp.2d 662, 665 (E.D. Tex. 2008); *Matter of the Extradition of Molnar*, 182 F. Supp.2d 682, 687 (N.D. Ill. 2002); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1215 (D. Nev. 1993); *In re Extradition of Chapman,* 459 F. Supp.2d 1024, 1026-27 (D. Haw. 2006); *In re Extradition of Santos*, 473 F. Supp.2d 1030, 1035-36 (C.D. Cal. 2006).

To illustrate, in *Leitner*, the fugitive was a U.S. citizen who had been arrested in Israel and charged with acts of terrorism against Arabs. Israeli authorities released Leitner on bail after he agreed to cooperate with them. After receiving death threats, Leitner fled to the United States and lived openly under his own name for a year and a half, attending law school, driving a taxi under his own name, and living with and frequently visiting his parents. Based on this, a magistrate judge found that Leitner did not pose a flight risk. The Second Circuit affirmed the district court's reversal of the grant of bail, holding that the lack of flight risk was not a "special circumstance." 784 F.2d at 161. *See also Salerno*, 878 F.2d at 318 (flight risk "is not a criteria for release in an extradition case"); *Matter of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986) ("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); *United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979) ("applicant's arguable acceptability as a tolerable bail risk" is not a special circumstance).[3] Similarly, findings regarding danger to the community both here and abroad would preclude bail, even in the face of arguably special circumstances. *See In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 735 (W.D. La. 1999); *Ramnath*,

---

[3] Courts differ in the order in which they consider flight risk and special circumstances. Some courts evaluate potential flight risk before proceeding to any special circumstances analysis. *E.g., Matter of the Extradition of Molnar*, 182 F. Supp. 2d at 687; *United States v. Taitz*, 130 F.R.D. 442, 445 (S.D. Cal. 1990). Other courts first determine special circumstances and then consider the potential for flight. *E.g., Extradition of Morales*, 906 F. Supp. 1368, 1373 (S.D. Cal. 1995); *Extradition of Nacif-Borge*, 829 F. Supp. at 1216; *Extradition of Mainero,* 950 F. Supp. 290, 295 (S.D. Cal. 1996). Regardless of the order of consideration, case authority is clear that both special circumstances and lack of flight risk must be established to grant bail. Practical considerations and judicial economy suggest determinations as to flight risk and danger to the community be made first.

1   533 F. Supp. 2d at 665; *Extradition of Molnar*, 182 F. Supp. 2d at 687; *Extradition of Nacif-Borge*, 829

2   F. Supp. at 1215; *Extradition of Santos*, 473 F. Supp. 2d at 1035-36.[4]

3         Assuming the fugitive is not a risk of flight and poses no danger to the community, the fugitive

4   must make an affirmative showing of special circumstances.  As discussed in detail below,  Courts have

5   declined to find "special circumstances" based on--

6         (1) the need to consult with one's attorney or participate in pending litigation

7         (2) the complexity of the pending litigation

8         (3) health issues, including discomfort, dietary needs, or associated health concerns while

9         incarcerated

10        (4) U.S. citizenship or pendency of naturalization proceedings

11        (5) political or professional status

12        (6) the availability of electronic monitoring

13        (7) the fugitive's character, past conduct, and/or ties to the community

14        (8) delay between the commission of the crime and the submission of the formal extradition

15        request

16        (9) ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings

17        (10) substantial likelihood of success against extradition or underlying criminal case in

18        requesting country

19        (11) availability of bail for the same offense in the requesting country.

20        While in certain exceptional cases, some of the above factors may have been deemed a special

21  circumstance, for the most part, where a court determines special circumstances to exist, the finding is

22

---

23      [4] The Ninth Circuit rejected the contention that under the Bail Reform Act, a court must limit its
evaluation of a defendant's potential danger to a geographic location within the United States.  *United*

24  *States v. Hir*, 517 F.3d 1081, 1088-89 (9th Cir. 2008).  Instead, the court held that if the defendant is
charged with a crime punishable under U.S. law, the court may consider the danger posed to a foreign

25  community, reasoning that the effect of the alleged offense occurs abroad.  *Id.*  In the international
extradition context, where the Bail Reform Act does not apply, there is an even greater justification for

26  extending consideration of the threat that a fugitive might pose to a community beyond the U.S. borders.
By definition, requests by other countries for extradition of a fugitive comprise violations of foreign law

27  that have a primary adverse effect on the foreign community.  If a court, in determining the issue of
danger to the community, were limited to considering only geographic areas located in the United

28  States, the court would be forced to ignore the potential danger that a fugitive's release might pose in a
foreign location where the crime was committed.

1   generally based on a combination of factors, as opposed to any single consideration.  Such findings are

2   very case-specific and within the discretion of the court, mindful of the strong presumption against bail

3   and the future reciprocity of other countries being at stake.

4          <u>Need to consult with counsel or participate in pending litigation</u>

5          The majority of courts have soundly rejected the need to consult with counsel and participate in

6   pending litigation as a sufficient special circumstance to justify bail.  *See, e.g., In the Matter of*

7   *Extradition of Smyth*, 976 F.2d 1535 (9th Cir. 1992) ("The need to consult with counsel, gather evidence

8   and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to

9   do these things"); *Accord Russell*, 805 F.2d at 1217.  There is nothing extraordinary or "special" about

10  the need to consult with counsel or participate in litigation.  Further, if these factors were recognized as

11  special circumstances, every person facing extradition would qualify for release pending extradition

12  proceedings; this would be a direct contradiction of the strong presumption against bail established by

13  the Supreme Court in *Wright.*  190 U.S. at 62.

14         Even the limited decisions granting bail to a fugitive based on these considerations have involved

15  unique and distinguishable facts.  *See, e.g., Mitchell*, 171 F. at 290 (granting limited release so that

16  fugitive could defend himself in ongoing litigation upon which his entire fortune depended); *In re*

17  *Extradition of Bowey*, 147 F. Supp. 2d 1365, 1368 (N.D. Ga. 2001) (bail granted to allow fugitive to

18  participate in divorce proceedings that directly affected the extradition case.)  As explained by the court

19  in *United States v. Hills*, 765 F. Supp. 381, 386 (E.D. Mich. 1991), "it is only if the court is convinced

20  that the defendant's personal participation in the conduct of the civil litigation is absolutely and

21  immediately necessary that it is deemed a sufficient 'special circumstance' to warrant release on bond."

22         <u>Complexity of the pending litigation</u>

23         The complexity of the pending litigation is likewise not an exceptional or special circumstance

24  justifying bail.  In *Russell*, 805 F.2d at 1217, the Fifth Circuit rejected the fugitive's argument that the

25  complexity of pending extradition proceedings and the foreign criminal trial justified bail.  Courts have

26  adopted this position in rejecting similar claims.  *See, e.g., United States v. Kin Hong*, 83 F.3d 523 (1st

27  Cir. 1996) (lengthy history of case not cited here); *United States v. Tang Yee-Chun*, 657 F. Supp. 1270,

28  1271-72 (S.D.N.Y. 1987); *Hababou v. Albright*, 82 F. Supp.2d 347, 352 (D.N.J. 2000).

<u>Health issues and health concerns while incarcerated</u>

Courts have declined to find discomfort, the need for a special diet, or other related health concerns associated with incarceration a special circumstance, particularly if the issue is one that can be controlled while incarcerated.  *See In re Klein*, 46 F.2d 85 (S.D. N.Y. 1930) (discomfort with confinement not a special circumstance); *Rouvier*, 839 F. Supp. at 541 n.9 (potentially serious heart condition that could be controlled with daily drug while in jail was not a special circumstance); *Nacif-Borge*, 829 F. Supp. at 1216-17 (need for specialized diet and exercise not special circumstance because no proof that incarceration raised serious deterioration of health); *Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 290-291 (S.D. N.Y. 1993) (serious health problems that can be dealt with in custody do not constitute special circumstances).  As the Court in *Hamilton-Byrne* noted, "[w]ere health problems a basis for release, both actual and feigned illnesses could rapidly empty custodial facilities."  *Id.*

While some courts have recognized a serious health condition as a special circumstance, these courts have limited its application to conditions that can only be treated while on bail or to cases involving a serious deterioration in health while incarcerated.  *See In re Hamilton-Byrne*, 831 F. Supp. at 290 ("Special circumstances might ... be found if health emergency could be established which could only be treated while a detainee was on bail," but ultimately finding no evidence that condition was unique or could not be treated in jail); *Salerno*, 878 F.2d at 318 (serious health deterioration while incarcerated may be a special circumstance); *United States v. Taitz*, 130 F.R.D. 442, 446 (S.D. Cal. 1990) (allergic reaction to sweeteners used in jail food and to soap used in jail laundry recognized as special circumstance, in conjunction with other special circumstances.)

As a rule, to avoid incarceration, a criminal defendant "must show that no constitutionally acceptable treatment can be provided while he is incarcerated."  *Rouvier*, 839 F. Supp. at 542, *United States v. Kidder*, 869 F.2d 1328, 1330-1331 (9th Cir. 1989); *Nacif-Borge*, 829 F. Supp. at 1217.  In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to [a prisoner's] serious medical needs" violates the Eighth Amendment's ban against cruel and unusual punishment.  429 U.S. 97, 104 (1976), *rehg denied* 429 U.S. 1066 (1977), *cert. denied*, 434 U.S. 974 (1977).

<u>United States citizenship or pendency of naturalization</u>

Courts have found no special circumstances for fugitives who are U.S. citizens or are in the

process of naturalization.  *See Matter of the Extradition of Garcia*, 615 F. Supp. 2d 162, 173 (S.D.N.Y. 2009) ("Garcia is not entitled to special consideration based on his status as a United States citizen. Citizens and non-citizens alike must demonstrate special circumstances to overcome the presumption against bail.  [citations omitted.]"  *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003) (the absence of defendant being a flight risk, defendant's desire to take a dental board examination, that defendant may have naturalization proceedings pending, and that the criminal charge in Mexico is a bailable offense, do not individually or collectively constitute special circumstances warranting defendant's release from custody).

Political or professional status

Likewise, a political or professional status does not create a special circumstance.  *See Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 131 (E.D. N.Y. 2001) (standing as member of Russian-Belarus Union is not a special circumstance); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) ("mere fact that a respondent is a doctor - even a highly trained one - cannot be a 'special circumstance' within the meaning of *Wright*, unless we are prepared to say that the normal rules of extradition are not going to apply to doctors by virtue of who they are").

Availability of electronic monitoring

Similarly, the availability of electronic monitoring is not a special circumstance.  *See Matter of Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997); *Hills*, 765 F. Supp. at 389.

Fugitive's character, past conduct, and ties to community

A fugitive's character, including past conduct, lack of a prior criminal record, and ties to the community, should not be considered a special circumstance.  Instead, and as most district courts have recognized, a defendant's character is more appropriately considered when conducting the independent flight risk analysis.  In *Nacif-Borge*, the court explained that "[m]ore often, the character and background of a person subject to extradition are considered in regard to risk of flight and danger to the community rather than as a special circumstance."  829 F. Supp. at 1220.  *See also Matter of Extradition of Sidali*, 868 F. Supp. 656 (D. N.J. 1994) (rejecting "extraordinary character" based on employment, family ties, no prior record, and community respect as a special circumstance); *In re Extradition of Valles*, 36 F. Supp. 2d 1228, 1231 (S.D. Cal. 1998) (fugitive's past conduct and community ties used to

8

1   assess flight risk.)

2       Although some courts have included character, past conduct, and ties to the community in their

3   assessment of special circumstances, these decisions are generally distinguishable on their facts and rely

4   on the presence of other circumstances. *See, e.g., Taitz*, 130 F.R.D. at 445-46 (acknowledging character

5   as a special circumstance in addition to religious needs, likelihood of delay, health risks, and availability

6   of bail in foreign country).

7       <u>Delay between the commission of the crime and the submission of the formal extradition request</u>

8       The delay between the commission of the crime and the submission of the formal extradition

9   request is not a special circumstance. *See*, *e.g.*, *Matter of Extradition of Drumm*, 150 F. Supp.3d 92, 98-

10  99 (D. Mass. 2015) (seven-year delay in seeking extradition not a special circumstance warranting bail);

11  *In re Johnson*, 2012 WL 3929811, at *4-5 (W.D. Pa. 2012) ("Similarly, the fact that there has been a

12  long delay between the commission of the crime and the Formal Request for Extradition does not

13  constitute a 'special circumstance,' but is a factor to be considered with the nature of the underlying

14  crime, the risk of flight, and the interests of the countries in extradition to determine the propriety of

15  continued detention;" Mexican arrest warrant issued in 2003 and extradition bail hearing conducted in

16  2012); *United States v. De Lorea*, 2006 WL 1518981, at *3-4 (N.D. Ind. 2006) (10 to 12 year delay by

17  Mexico in seeking extradition not a special circumstance justifying release even though the fugitive was

18  a family man who was employed, had lived a stable life in the United States, and had no prior criminal

19  history.)

20      <u>Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings</u>

21      Delays during the course of extradition proceedings do not qualify as special circumstances.  An

22  extradition proceeding is not a criminal case and therefore, a fugitive has no Sixth Amendment right to a

23  speedy trial.  *See Martin*, 993 F.2d at 829; *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978);

24  *Jhirad v. Ferrandina*, 536 F.2d 478, 485 n. 9 (2d Cir.), *cert. denied,* 429 U.S. 833 (1976), *rehg denied,*

25  429 U.S. 988 (1976).

26      Courts considering whether delays, either actual or projected, can be a qualifying "special

27  circumstance" have issued such a wide and disparate range of answers that delay cannot be uniformly

28  claimed as a special circumstance.  Several courts have found no special circumstance allowing for bail

1   to exist in cases where the delay has ranged from five months to over a year.  *See, e.g., Heilbronn*, 773

2   F. Supp. 1576 (rejecting fugitive's bail claim that five-month delay, lack of flight risk, and potential

3   public benefit upon release based on status as a doctor were special circumstances); *Hababou*, 82 F.

4   Supp. 2d 347 (delay of over one year for trial on domestic charges not a special circumstance).

5           While courts have not always been consistent when considering delays, based at least in part on

6   the different factual situations involved in each case, there are some clear guidelines that can be drawn

7   from these decisions.  First, like all special circumstances, the delay itself must be unusual and

8   extraordinary.  *See Salerno*, 878 F.2d at 318 (lack of unusual delay considered in rejecting bail claim);

9   *Kin-Hong*, 83 F.3d at 524 (recognizing delay as possible special circumstance, but finding no showing

10  of unusual delay); *Klein*, 46 F.2d 85 (delay must be abnormal or unreasonable to constitute a special

11  circumstance).

12          Additionally, a delay is not a special circumstance when it is caused by or attributed to the

13  fugitive.  *Heilbronn*, 773 F. Supp. at 1581 (the court is unsympathetic to a defendant who himself

14  requested several delays); *Kin-Hong*, 83 F.3d at 525 (rejecting bail claim where "[t]o the extent that

15  there has been some delay, [the fugitive] himself is partly responsible"); *United States ex rel.*

16  *McNamara v. Henkel*, 46 F.2d 84 (S.D. N.Y. 1912) (delay justifies bail "only where the hearing date

17  comes and the complainant is not ready to proceed").

18          <u>Substantial likelihood of success against extradition or against requesting country's charges</u>

19          Some courts have incorrectly held that the probability of a fugitive's success against extradition

20  or against the foreign charges underlying the extradition requests qualify as a special circumstance.  *See,*

21  *e.g., Bowey*, 147 F. Supp. 2d at 1368 (bail granted based on likelihood of success against criminal

22  charges in France, need for participation in directly-related divorce proceeding, and absence of flight

23  risk).  These decisions misconstrue the scope of a bail hearing and the court's limited role in the

24  extradition process.

25          First, any assessment of extraditability is a substantive question that is to be decided at the

26  extradition hearing itself and is not relevant to a fugitive's bail application.  *Sidali*, 868 F. Supp. at 658-

27  59 (probability of success against extradition "relate[s] to whether [the fugitive] should be extradited not

28  whether he should be released on bail).  Further, the court's role at an extradition hearing is limited to

10

1    making a determination of the sufficiency of the extradition request and the existence of probable cause.

2    Considerations of whether the fugitive will ultimately prevail against the charges following extradition

3    is beyond the scope of the extradition proceedings.  *See Charlton v. Kelly*, 229 U.S. 447, 462 (1913);

4    *Collins v. Loisel*, 259 U.S. 309, 316-317 (1922); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th  Cir. 1978),

5    *cert. denied*, 439 U.S. 932 (1978); *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997), *cert.*

6    *denied*, 525 U.S. 810 (1998).

7         Still, courts that have considered this issue when applying the special circumstances test have

8    required the fugitive to establish a "high probability" of success to warrant bail.  *E.g., Nacif-Borge*, 829

9    F. Supp. at 1216 (no "high" probability of success); *Kin Hong*, 83 F.3d at 524-25 (record did not

10    establish probability of success one way or the other); *Matter of Extradition of Mainero*, 950 F. Supp.

11    290, 294-95 (S.D. Cal. 1996) (bail denied where no likelihood of prevailing at extradition hearing).

12    Even in *Salerno*, 878 F.2d at 318, the leading case citing probability of success as a possible special

13    circumstance, the court ultimately declined the fugitive's claim for failure to demonstrate the likelihood

14    of success.  *See also Kin Hong*, 83 F.3d at 524 (burden not met), *Rouvier*, 839 F. Supp. 537 (same).  The

15    limited purpose of the bail proceeding, the limited scope of the court's inquiry at the extradition

16    proceeding, and the high burden that the fugitive needs to establish all weigh heavily against the

17    granting of bail.

18         <u>Availability of bail in the requesting country</u>

19         The availability of bail for the charged offense in the requesting country is not a special

20    circumstance justifying bail.  In fact, the bail practices of the requesting country are entirely irrelevant.

21    By statute, 18 U.S.C. §§ 3184 et. seq., and through its mandatory treaty obligations, the United States is

22    obligated to deliver fugitives to the requesting country.  As a result, a court's role is limited to

23    determining the sufficiency of the extradition request and the existence of probable cause.  *Charlton*,

24    229 U.S. at 462; *Collins*, 259 U.S. at 316-317; *Hooke*, 573 F.2d at 1368; *DeSilva*, 125 F.3d at 1112.  If

25    the availability of bail in the foreign country were a special circumstance justifying bail in the United

26    States:

27         [C]ourts (would be forced) to make "searching reviews of foreign law to determine whether bail
          is appropriate for a given defendant in a given country for a given offense... That would be an

28         undesirable practice:  it might well be unworkable, and, if applied widely, it could eviscerate, at
          least with respect to requesting countries whose domestic practice, like our own, strongly favors

1    bail, the doctrine set by the Supreme Court that bail is the exception, not the rule, in international
2    extradition cases.

3    Finally, we note that an extradition treaty between sovereign nations is essentially a contract, and
     the concern in an international extradition case is not to mirror the internal bail practices of the
4    requesting country, but, rather, to deliver the extraditee to that country if the conditions
     precedent to extradition, as set forth in the treaty, are satisfied. To say that the extraditee would
5    have been granted bail in the requesting country, had he been arrested there, or that he will be
     granted bail once returned there, thus misses the point.

6    *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386-87 (D. Nev. 1995) (internal citations and quotes

7    omitted).

8        Based on this reasoning, courts have rejected claims that bail availability in the foreign country

9    bears on the determination of whether special circumstances exist. *See Rouvier*, 839 F. Supp. at 540

10   (bail availability is not a special circumstance); *Sutton*, 898 F. Supp. at 695 (same); *Orozco*, 268 F.

11   Supp. 2d at 1117.

12   **III.    FUGITIVE POSES A RISK OF FLIGHT AND HAS FAILED TO ESTABLISH SPECIAL**
13                           **CIRCUMSTANCES**

14       The Fugitive in this case has not met his burden, and the Court should deny his request for bail.

15   A fugitive charged with crimes in another country is already by definition in flight or is deliberately

16   absent from that jurisdiction.  Here, the strong presumption against bail is supported by the fact that

17   Moulatsiotis is wanted by Germany on charges of fraud.  He had a detailed call with a co-conspirator

18   discussing the fact that German authorities were searching the coconspirators property and had seized

19   the coconspirators' phones and computers.  Because Moulatsiotis is a risk of flight, the court need go no

20   further to deny his application for bail.  Moulatsiotis has been unable to meet this necessary independent

21   basis to obtain bail, and the court therefore need not even consider arguments regarding special

22   circumstances.

23       However, were the Court satisfied that Moulatsiotis is not a flight risk and poses no danger to the

24   community here or abroad, Moulatsiotis cannot demonstrate to the court that special circumstances exist

25   that would justify bail in this case.  Moulatsiotis has a heavy burden to meet in proving the exceptional

26   circumstances that would vitiate the strong presumption against bail.  In essence, Moulatsiotis'

27   anticipated arguments are expected to attempt to persuade this Court that he is a good bail risk.  His

28   position, however, is legally insufficient under U.S. case law to justify granting bail in an international

extradition proceeding.  Allowance of bail in any amount would not guarantee his presence in Court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs.  While forfeiture of bail in domestic criminal cases is designed, at least in part, to compensate the court that is seeking the accused's presence for trial, forfeiture of bail in international extradition cases due to the failure of the fugitive to appear would leave the requesting country, here Germany, without either remedy or compensation.

## IV.    CONCLUSION

In sum, Moulatsiotis is a flight risk because of the seriousness of the pending criminal charges in Germany, and his failure to appear there to address the outstanding charges.  He has not demonstrated that special circumstances exist that would justify bond in his case.  He has a prior criminal conviction for fraud in Germany, and a potential determination that he does not pose a risk of flight does not individually constitute a special circumstance.  His release on bail would have negative reciprocal implications for U.S. foreign policy in cases where the United States seeks extradition of fugitives from Germany.  Based on the foregoing, the United States requests that the Court deny Moulatsiotis' anticipated request for bail.

Dated:  November 2, 2021                                         Respectfully submitted,

                                                                STEPHANIE M. HINGS
                                                                Acting United States Attorney

                                                                        /s/
                                                                MAUREEN C. BESSETTE
                                                                Assistant United States Attorney
                                                                Northern District of California